UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SARA CHESTER,

     Plaintiff,

v.                                 Case No:   2:14-cv-640-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

     This cause is before the Court on Plaintiff Sara Chester's Complaint (Doc. 1) filed on

October 30, 2014.  Plaintiff seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("SSA") denying her claim for a period of disability,

disability insurance benefits, and supplemental security income.  The Commissioner filed the

Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page

number), and the parties filed legal memoranda in support of their positions.  For the reasons set

out herein, the decision of the Commissioner is **affirmed** pursuant to § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g).

     **I.**     **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

     **A.**     **Eligibility**

     The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2),

1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of

persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.      Procedural History

On February 14, 2011, Plaintiff filed an application for disability insurance benefits and

for supplemental security income asserting an onset date of March 17, 2007.  (Tr. at 92-93, 236-

250).  Plaintiff's applications were denied initially on April 19, 2011, and on reconsideration on

May 23, 2011.  (Tr. at 92-95).  A hearing was held before Administrative Law Judge ("ALJ")

Dwight Evans on October 18, 2012, and a Supplemental Hearing was held on January 23, 2013.

(Tr. at 29-83).  The ALJ issued an unfavorable decision on April 12, 2013.  (Tr. at 11-22).  The

ALJ found Plaintiff not to be under a disability from March 17, 2007, through the date of the

decision.  (Tr. at 21).

On September 5, 2014, the Appeals Council denied Plaintiff's request for review.  (Tr. at

1-5).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on October 30,

2014.  This case is ripe for review.  The parties consented to proceed before a United States

Magistrate Judge for all proceedings.  (*See* Doc. 13).

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant

has proven that she is disabled.  *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891

(11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after

determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through September 30, 2012.  (Tr. at 13).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 17, 2007, the alleged onset date.  (Tr. at 13).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  right distal femur fracture (status post open reduction internal fixation (ORIF) surgery); and osteoarthritis.  (Tr. at 13).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. at 15).  At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a full range of sedentary work.  (Tr. at 15).  The ALJ determined that Plaintiff was unable to perform her past relevant work.  (Tr. at 20).  After considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. at 21).  The ALJ concluded that

---

January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

Plaintiff was not under a disability from March 17, 2007, through the date of the decision. (Tr. at 21).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### II. Analysis

On appeal, Plaintiff raises three issues. As stated by Plaintiff, they are:

(1) The ALJ failed to consider Listing 12.02 for Organic Mental Disorders, when Plaintiff suffered a traumatic brain injury and every treating and examining source noted abnormalities on examination.

(2) The ALJ failed to consider whether Plaintiff medically equals Listing 12.05C, when the record contains IQ testing at the level required by the listing, along with other findings that are of equal medical significance.

(3) Substantial evidence does not support the ALJ's residual functional capacity finding, which does not include mental limitations, despite evidence of traumatic brain injury, with subsequent depression and problems with memory and concentration.

(4) The decision fails to consider Chester's Vestibular Disorder.

(Doc. 15 at 1-2).  The Court will address each issue in turn.

## A. Listings

Plaintiff argues that the ALJ erred in failing to consider Listing 12.02 for Organic Mental Disorders in his decision, despite the evidence establishing that Plaintiff suffered from a traumatic brain injury, evidence that she continues to have memory and depression problems, evidence that she has deficits in her intellectual functioning, and evidence that memory testing revealed deficits in memory.  Plaintiff argues in her second issue that the ALJ erred in failing to consider whether Plaintiff met or equaled Listing 12.05C.  Plaintiff claims that her condition medically equals this Listing.  The general principals are the same for the first two issues.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. at 15).  The ALJ specifically mentioned Listing 1.02 in his decision, and did not mention either Listing 12.02 or Listing 12.05C.  (Tr. at 15).  In the decision, the ALJ stated that "[t]he medical evidence does not establish the presence of medical findings that would meet or equal **any listed impairment**."  (Tr. at 15) (emphasis added).

At step three, to meet the requirements of a listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The Listings of Impairments in the Social Security Regulations identify impairments that are considered severe enough to prevent a person from engaging in gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a plaintiff can meet a listed impairment or otherwise establish an equivalence, then a plaintiff is presumptively determined to be disabled, and the ALJ's sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 626 (11th Cir. 1984). The burden is on Plaintiff to show that she meets the Listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet a Listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a)-(d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id*. (citing 20 C.F.R. § 404.1526(a)).

**1.  Listing 12.02**

**a.  Reference to specific Listing**

Plaintiff argues that the ALJ only mentioned Listing 1.02, and never considered Listing 12.02 for Organic Mental Disorders. Despite evidence in the record establishing that Plaintiff suffered from traumatic brain injury, Plaintiff argues that the ALJ did not consider Plaintiff's

memory and depression problems, IQ testing revealing deficits in intellectual functioning, and memory testing revealing deficits in memory.  Plaintiff concludes that the ALJ erred in failing to consider whether Plaintiff met Listing 12.02, and argues that the decision of the ALJ must be reversed.  The Commissioner responds that Plaintiff's argument in this regard is without merit because the ALJ's determination that a claimant does not meet the Listings may be implied, and is implied in this case.

An ALJ's failure to discuss certain Listings at step three does not "necessarily show that the ALJ did not consider those listings." *Flemming v. Comm'r of the Soc. Sec.*, 2015 WL 8732364, at *2 (11th Cir. Dec. 15, 2015).  An ALJ is required to consider the Listings applicable to a claimant when making a step-three determination, but an ALJ is not required to "mechanically recite" the evidence or the listings he considered.  *Id*. (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1462 (11th Cir. 1986)).  To determine if an ALJ considered a Listing, the Court must review the ALJ's findings and determine if there is an implied finding that a claimant did not meet or equal a listing.  *Id*.  Upon review of an ALJ's decision, a court may infer from the record that an ALJ implicitly considered and found that a claimant's disability did not meet or equal a Listing.  *Id*.

In this case, the ALJ found that Plaintiff's impairments did not meet or equal "any listed impairment."  (Tr. at 15).  The ALJ thoroughly considered the four broad functional areas of Listing 12.02 paragraph "B" criteria, namely daily living; social functioning; concentration, persistence or pace; and repeated episodes of decompensation.  To satisfy Listing 12.02 paragraph "B", Plaintiff must show a marked restriction.  After reviewing Alethia DuPont, Psy.D.'s and Cheryl Kasprzak, Psy.D.'s records, the ALJ concluded that Plaintiff did not have a marked limitation in any of these areas.  (Tr. at 14-15).  Thus, while the ALJ did not explicitly

mention Listing 12.02, he impliedly considered the requirements of this Listing in the decision.

The Court finds that the ALJ did not err in failing to explicitly mention Listing 12.02.[2]

### b.  Meeting Listing 12.02

Plaintiff argues that she met the criteria for Listing 12.02, and the ALJ erred in failing to

find that she was disabled.  The Commissioner argues that Plaintiff failed to sustain her burden

of showing that she met the requirements of Listing 12.02.

Listing 12.02 concerning Organic Mental Disorders provides as follows:

Organic Mental Disorders: Psychological or behavioral abnormalities associated
with a dysfunction of the brain.  History and physical examination or laboratory
tests demonstrate the presence of a specific organic factor judged to be etiologically
related to the abnormal mental state and loss of previously acquired functional
abilities.

The required level of severity for these disorders is met when the requirements in
both A and B are satisfied, or when the requirements in C are satisfied.

A.  Demonstration of a loss of specific cognitive abilities or affective changes and
the medically documented persistence of at least one of the following:

1.  Disorientation to time and place; or

2.  Memory impairment, either short-term (inability to learn new information),
intermediate, or long-term (inability to remember information that was known
sometime in the past); or

3.  Perceptual or thinking disturbances (e.g., hallucinations, delusions); or

4.  Change in personality; or

5.  Disturbance in mood; or

6.  Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and
impairment in impulse control; or

---

[2]  In Plaintiff's Reply Memorandum (Doc. 21), Plaintiff adds that the ALJ erred in not
specifically mentioning Listing 12.05C.  In the following section *infra*, the Court finds that the
ALJ discussed elements of Listing 12.05C in the decision, thereby impliedly considering the
requirements of this Listing.  The Court finds that the ALJ did not err in failing to explicitly
mention Listing 12.05C.

7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.02.

Plaintiff claims that she meets the introductory requirements because she suffered a traumatic brain injury, traumatic subarachnoid hemorrhage, right frontal intracerebral hemorrhage, and left frontal subdural hematoma, which required cognitive remediation. Plaintiff contends that since her accident, a treating psychologist, a consultative examining psychologist, and a consultative examining neurologist have found abnormalities of mood and memory, and a

treating psychologist diagnosed Plaintiff with post-concussion syndrome.  The Commissioner responds that it is not enough that Plaintiff meets the introductory requirements.  Rather, Plaintiff must meet the criteria for paragraphs A and B, or C.

Listing 12.02 requires that a disorder of the brain be diagnosed based on a history and physical examination or laboratory tests.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.02.  In addition, to show the required level of severity, the requirements of both paragraphs A and B must be met.  *Id*.  Plaintiff argues that she met the requirements of paragraph A.  Even if Plaintiff meets the requirements of Listing 12.02 paragraph A, Plaintiff must also meet the requirements of Paragraph B, which requires having marked limitations in two of the listed areas.  Plaintiff fails to set forth any argument that she meets the requirements of paragraph B.  Further, as mentioned *supra*, the ALJ considered whether Plaintiff had marked limitations in the areas of daily living; social functioning; concentration, persistence or pace; and repeated episodes of decompensation and found Plaintiff had no limitations in daily living, no limitations in social functioning, mild limitations in concentration, persistence or pace, and no episodes of decompensation.  (Tr. at 14-15).  Even if Plaintiff met the requirements of paragraph A, Plaintiff failed to meet her burden to show that she met the requirements of Paragraph B.

Plaintiff claims that she met the requirements of Listing 12.02 paragraph C(2), and should be found disabled.  Plaintiff argues that she met the requirements of paragraph C because Gregory Young, M.D. determined that Plaintiff's mental impairments precluded her from returning to work.  The Commissioner argues that one comment by Dr. Young is not sufficient to satisfy the requirements of Listing 12.02 paragraph C(2).

Listing 12.02 paragraph C(2) is satisfied if even a minimal increase in mental demands or changes in the environment would cause a person to decompensate.  20 C.F.R. § Pt. 404, Subpt.

P, App. 1 § 12.02(C)(2).  In September 21, 2012, October 15, 2012, and November 13, 2012,

Dr. Young saw Plaintiff and found some lessening of depression with medication, found Plaintiff

had difficulties with memory, found Plaintiff had not been able to work for five years, and "[i]t is

not likely patient will be able to resume employment in the next 12 months."  (Tr. at 416, 420,

484).

Plaintiff has not met her burden to show that she met the requirements of Listing 12.02

paragraph C(2).  Plaintiff failed to show that Dr. Young found Plaintiff was unable to resume

employment because of the requirements listed in paragraph C(2) such that the employment

would cause a minimal increase in mental demands or changes in the environment that would

result in causing Plaintiff to decompensate.  Dr. Young provided no explanation as to why he

believed Plaintiff was unable to resume work.  Further, the ALJ considered Dr. Young's opinion

that Plaintiff was unable to resume work and gave his opinion no weight.  (Tr. at 14).  The ALJ

found that the issue of whether Plaintiff is able to work is a finding reserved to the

Commissioner.  Further, the medical evidence of record was minimal as to mental health notes.

(Tr. at 14).  The Court finds that Plaintiff failed to meet her burden of showing that she met the

requirements of Listing 12.02 paragraph C(2).  The Court finds that the ALJ did not err in failing

to find that Plaintiff met Listing 12.02.[3]

### c.  Meeting Listing 12.05C

Plaintiff argues that she meets the requirements of Listing12.05C.  Plaintiff claims that

she has sub-average general intellectual functioning with a valid IQ score of 61, and she has

severe physical impairments that impose additional and significant work-related limitations of

---

[3]  Plaintiff argues that it was improper for the ALJ to rely on Dr. Kasprzak's evaluation because she administered the Test of Memory Malingering to Plaintiff.  This issue will be addressed in the next section *infra*.

function.  Plaintiff recognizes that she fails to meet the requirement that the onset of her

intellectual disability was before the age of 22, so she cannot meet the Listing, but argues that

she does medically equal the Listing.  The Commissioner asserts that Plaintiff failed to meet her

burden of establishing that she met or equaled Listing 12.05C.

Listing 12.05 provides as follows:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

>> A.  Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

>> OR

>> B.  A valid verbal, performance, or full scale IQ of 59 or less;

>> OR

>> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

>> OR

>> D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

>> 1.  Marked restriction of activities of daily living; or

>> 2.  Marked difficulties in maintaining social functioning; or

>> 3.  Marked difficulties in maintaining concentration, persistence, or pace; or

>> 4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.05.  The structure of Listing 12.05 differs from other mental disorder listings by containing four sets of criteria, and the requirement that a plaintiff must satisfy the diagnostic description and one of the four sets of criteria.  20 C.F.R. pt. 404, Subpt. P, app. 1, § 12.05.

Plaintiff argues that her disability equals the Listing due to her traumatic brain injury. The Commissioner contends that Plaintiff has failed to show that she has a valid IQ score between the 60 to 70 range or deficits in adaptive functioning.  Plaintiff claims that she had a valid IQ score of 61 and, thus, complies with this requirement.

On November 12, 2012, Alethia DuPont, Psy.D. and Cheryl Kasprzak, Psy.D. completed a Psychological Evaluation.  (Tr. at 461-467).  Plaintiff provided information as to her history. (Tr. at 461).  Plaintiff was involved in an accident and was hit by a motor vehicle in 2007.  (Tr. at 461).  Plaintiff had multiple fractures, a closed head injury, and was in a medically induced coma for 2 days.  (Tr. at 461).  Dr. DuPont and Dr. Kasprzak conducted a mental status examination, a Wechsler Adult Intelligence Scale-Fourth Edition test, and a Test of Memory Malingering Results.  (Tr. at 463-466).  Plaintiff's full scale IQ score was 61, which is in the Mild Mental Retardation range of intellectual ability.  (Tr. at 465).  An issue arose when Dr. DuPont and Dr. Kasprzak administered the Test of Memory Malingering Results.  Dr. DuPont and Dr. Kasprzak determined that Plaintiff "did not have intact motivational integrity. Claimant's scores imply she knew some of the pictures were correct, but intentionally picked the incorrect responses.  The overall test results are not considered to be a valid and reliable assessment of her current functioning."  (Tr. at 466).  Dr. DuPont and Dr. Kasprzak determined that Plaintiff was exaggerating or fabricating the severity of symptoms.  (Tr. at 466).  They opined that Plaintiff's cognitive abilities,

> may have been compromised due to a prior head trauma, however, it is also likely that her mild cognitive deficits have been exaggerated or amplified during the testing today.  Based on the results of today's assessment, it's difficult to determine where else in today's evaluation she may be exaggerating or fabricating symptomatology.  In addition, it is difficult to determine her current intellectual functioning as it is unknown how much the aforementioned influenced her WAIS-IV Full Scale IQ score today.

(Tr. at 466).

While Dr. DuPont and Dr. Kasprzak found that Plaintiff's IQ score was 61 based on their testing, they were not convinced that this score was accurate due to Plaintiff's score on the malingering test.  Plaintiff argues that the Court should not consider the Test of Memory Malingering.  Plaintiff claims that the results of this test are of questionable validity.  Plaintiff claims that the Test of Memory Malingering was the sole basis for Dr. Kasprzak to question the validity of the results of the other tests.  Plaintiff argues that the Social Security Administration "forbids the use of such tests because they are not valid tests and even in the presence of malingering, an individual can have severe functional limitations," citing *Disability Determination Services Administrator's Letter No. 866* (Jan. 26, 2012); POMS DI 22510.006(D).  Further, Plaintiff argues that even if the Court finds that the IQ test is invalid, the ALJ did not find the IQ test invalid and the decision contains no discussion of the IQ test.

The Commissioner responds that while the Commissioner does not generally purchase the malingering or memory tests, nothing prohibits the ALJ from considering the results of the test when it is part of the record.

Pursuant to a POMS Directive, the Commissioner is advised not to purchase a malingering test as part of a consultative examination to determine whether a claimant is

malingering because no test is conclusive of this issue.  POMS:  DI 22510.006D.[4]  However, when these types of tests are part of the medical record, then an ALJ should consider them along with all the other relevant evidence in the case.  *Id.*

The ALJ considered the Test of Memory Malingering administered on November 12, 2012 by Dr. DuPont in conjunction with the other medical records.  (Tr. at 14).  The ALJ noted that the results of the malingering test indicated that Plaintiff was exaggerating or fabricating the severity of her symptoms.  (Tr. at 14).  The ALJ recognized that Plaintiff's cognitive abilities may have been compromised due to a prior head trauma, but it was likely that her mild cognitive deficits were magnified or exaggerated during the testing by Dr. DuPont and Dr. Kasprzak.  (Tr. at 14).  The ALJ concluded that based upon Plaintiff's scores on the malingering test, he was unable to determine when Plaintiff was exaggerating or fabricating her symptoms.  (Tr. at 14). Further, the ALJ found that he was unable to determine Plaintiff's current intellectual functioning because it was unknown as to which portions of the testing was accurate and which portions were exaggerated or fabricated.  (Tr. at 14).  The ALJ assigned great weight to the opinions of Dr. DuPont and Dr. Kasprzak.  (Tr. at 14).

Plaintiff argues that her disability medically equals Listing 12.05C because she has a valid IQ score of 61.  The doctors that administered Plaintiff's IQ testing could not verify that the testing was accurate because Plaintiff was found to be malingering on the Test of Memory Malingering.  The ALJ properly considered the Test of Memory Malingering in conjunction with all of the medical evidence.  The ALJ afforded great weight to the opinions of the doctors who administered the IQ testing.  While the doctors found the testing to show that Plaintiff had an IQ

---

[4]  The Eleventh Circuit noted that POMS directives are useful, but not binding on whether a particular Listing is met.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

of 61, the doctors could not verify the accuracy of this testing due to Plaintiff malingering. Without an accurate or verifiable IQ score, the ALJ could not determine whether Plaintiff's limitations met or equal Listing 12.05.  The Court finds that the ALJ did not err in failing to find that Plaintiff met or equaled Listing 12.05, and his decision was supported by substantial evidence.

### B.  RFC finding

Plaintiff argues that the ALJ erred in failing to include any mental limitations in Plaintiff's RFC, and substantial evidence does not support that Plaintiff has no non-exertional mental limitations.  Plaintiff cites to the consultative examination of Dr. Kasprzak, the treatment records of Dr. Young, and a comment by a Disability Determination Service interviewer to support the argument that Plaintiff has mental limitations.  Plaintiff argues that even with the results of the Test of Memory Malingering, Dr. Kasprzak's report does not contain any inconsistencies between Plaintiff's presentation and the IQ test and Wechsler Memory Scales results, and Dr. Kasprzak's mental status examination revealed abnormalities of memory and concentration.  Additionally, Plaintiff reiterates that the Social Security Administration has repeatedly prohibited ALJs from ordering the Test of Memory Malingering because these tests cannot conclusively determine the presence of malingering.  Finally, Plaintiff adds that with her non-exertional mental limitations, the ALJ should have retained the services of a vocational expert.

The Commissioner responds that substantial evidence supports that ALJ's RFC finding, and Plaintiff fails to show that she is unable to perform unskilled sedentary work.  The Commissioner adds that while the ALJ did not specifically limit Plaintiff to unskilled work, the regulations give notice that there are approximately 200 unskilled sedentary position in the

national economy.  The Commissioner contends that unskilled work involves work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The Commissioner concludes that substantial evidence supports the finding that Plaintiff could perform unskilled sedentary occupations administratively noticed by the Medical-Vocational Guidelines ("Grids").

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and, based on that determination, decide whether the plaintiff is able to return to his or her previous work.  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  The determination of a claimant's RFC is within the authority of the ALJ and, along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The RFC is the most a plaintiff is able to do despite her physical and mental limitations.  20 C.F.R. § 404.1545(a)(1).  In determining whether Plaintiff can return to her past relevant work, the ALJ must determine Plaintiff's RFC using all of the relevant medical and other evidence in the record.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004); 20 C.F.R. § 404.1520(e).  An ALJ must consider all of a claimant's mental impairments that are sufficiently severe in combination with all of a claimant's impairments.  *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005).

Plaintiff argues that the ALJ afforded great weight to the opinion of consultative examiner Dr. Kasprzak, and Dr. Kasprzak's examination showed:  abnormalities in Plaintiff's ability to solve simple hypothetical math problems; inability to give meaning to a proverb; far below-average reasoning ability; below-average immediate memory; abnormal attention and concentration; unable to spell "world" backwards; unable to count backwards from 20 by serial

sevens;  but had fair insight and judgment with slight awareness.  Plaintiff asserts that Dr.

Kasprzak assigned a GAF of 55.  Plaintiff indicates that Dr. Kasprzak afforded Plaintiff a

prognosis of guarded for gainful employment.  Plaintiff also asserts that Dr. Kasprzak afforded

Plaintiff moderate limitations in her abilities to understand and remember complex instruction;

carry out complex instruction; and make judgments on complex work-related decisions.  Plaintiff

concludes that Dr. Kasprzak's opinion shows that Plaintiff has mental limitations that were not

included in Plaintiff's RFC.  Plaintiff also cites to Dr. Kasprzak's IQ test results and Wechsler

Memory Scale results.  Finally, Plaintiff again discounts the importance of the Test of Memory

Malingering Results that showed Plaintiff was malingering during the testing with Dr. DuPont

and Dr. Kasprzak.

The Commissioner responds that the ALJ afforded great weight to Dr. DuPont and Dr.

Kasprzak's evaluation, and the evaluation supports the conclusion that Plaintiff is able to

perform unskilled, sedentary work.  The Commissioner argues the findings from Plaintiff's

testing had questionable validity due to the results of the Test of Memory Malingering that

showed Plaintiff was malingering.  The Commissioner reviewed the mental health source

statement completed by Dr. DuPont and Dr. Kasprzak, arguing that it supports the proposition

that Plaintiff can perform unskilled sedentary work.

On November 12, 2012, Dr. Kasprzak completed a Medical Source Statement of Ability

To Do Work-Related Activities (Mental).  (Tr. at 470-72).  Dr. Kasprzak found that Plaintiff's

ability to remember and carry out instructions was affected by her impairment.  (Tr. at 470).

However, Dr. Kasprzak found that Plaintiff was able to understand and remember simple

instructions, carry out simple instructions, and make judgments on simple work-related

decisions.  (Tr. at 470).  Dr. Kasprzak found Plaintiff to be moderately limited in understanding

and remembering complex instructions, in carrying out complex instructions, and making judgments on complex work-related decisions.  (Tr. at 470).  Kr. Kasprzak commented that Plaintiff claimed to have completed a twelfth grade education, but scored a 61 on the IQ test. (Tr. at 470).  Dr. Kasprzak found that Plaintiff's score on the Test of Memory Malingering indicated that Plaintiff "did not have intact motivational integrity.  It is difficult to determine where else she may have exaggerated symptomatology."  (Tr. at 470).  Dr. Kasprzak also determined that Plaintiff had no limitations in interacting appropriately with the public, supervisors and co-workers; and had no limitations in responding appropriately to usual work situations and to changes in a routine work setting.  (Tr. at 471).  Dr. Kasprzak also determined that Plaintiff was able to manage benefits in her own best interest, and can manage her finances independently.  (Tr. at 467, 472).

As discussed *supra*, the ALJ afforded great weight to the opinions of Dr. DuPont and Dr. Kasprzak.  These psychologists administered the Test of Memory Malingering, which indicated that Plaintiff was malingering and that the test results may not have been valid.  Dr. Kasprzak found that Plaintiff did not have intact motivational integrity, and that it was difficult to determine where in her responses she may have exaggerated symptomatology.  (Tr. at 466, 470). The Court found *supra* that the ALJ properly considered Plaintiff's malingering in combination with Plaintiff's other medical records.  While Plaintiff argues that the results from the testing by Dr. DuPont and Dr. Kasprzak show that Plaintiff had mental limitations, Plaintiff fails to take into consideration that Dr. DuPont and Dr. Kasprzak included a caveat that they could not determine the validity of the test results due to the lack of intact motivational integrity.  If Dr. DuPont and Dr. Kasprzak are unsure of the validity of Plaintiff's test results, the Court cannot rely on these test results to support Plaintiff's position.

Further, Dr. Kasprzak's Medical Source Statement indicates that Plaintiff can follow simple instructions but not complex instructions, and is able to interact with the public and co-workers. (Tr. at 471). The ALJ used the Grids in determining based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 21). "All of the jobs listed in the Grids are unskilled, meaning that they require 'little or no judgment' in the performance of 'simple duties that can be learned on the job in a short period of time'" *Jordan v. Comm'r of Soc. Sec.*, 470 F. App'x 766, 770 (11th Cir. 2012) (quoting *Jones v. Apfel*, 190 F.3d 1224, 1228-29 (11th Cir. 1999)) (citing 20 C.F.R. § 416.968(a); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b)); *see also* 20 C.F.R. § 404.1568. Because the administratively noticed positions in the Grids are unskilled and limited to simple tasks by definition, an ALJ is not required to add any further limitation as to simple tasks. *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 878 (11th Cir. 2006). Therefore, by using the Grids, the ALJ impliedly included a limitation for simple tasks when determining the jobs that Plaintiff was able to perform. Unskilled jobs are limited to jobs that require simple duties, and this finding complies with the findings by Dr. Kasprzak.

Plaintiff also asserted that treating psychiatrist Dr. Young determined that even with treatment and medication, Plaintiff was impaired in short-term memory and had depressed mood and affect. Plaintiff claims that Dr. Young diagnosed Plaintiff with depressive disorder and post-concussion syndrome, assigning a GAF score of 40. Plaintiff added that neurologist Dr. Kibria found Plaintiff had flattened affect and slow responses. Plaintiff also indicated that a Disability Determination Service interviewer noted that Plaintiff had difficulty concentrating and keeping on track.

The Commissioner argues that while there are some instances in the records showing that Plaintiff had an impaired memory, there are other instances in the record showing that Plaintiff's memory was intact.  Further, consultative examiner Stanley Rabinowitz, M.D. found in an evaluation in November 2008 that Plaintiff's memory was intact, Plaintiff exhibited no behavioral difficulties, and was able to relate to the interviewer.  In further support, the Commissioner cites to Eshan Kibria, M.D.'s November 2012 examination that showed Plaintiff's mental activities, understanding, memory, concentration, social interaction and adaption were intact.

The ALJ summarized Dr. Young's records.  (Tr. at 13-14).  The ALJ noted that Plaintiff underwent a psychiatric evaluation on August 24, 2012.  (Tr. at 13).  There were no records of any previous mental health treatment.  (Tr. at 13).  The ALJ noted that Dr. Young found Plaintiff had an impaired short-term memory, and her judgment and insight were fair.  (Tr. at 13).  Dr. Young found that Plaintiff's thoughts were coherent, logical and goal-directed, her psychomotor was normal, and she was cooperative.  (Tr. at 13).  Dr. Young prescribed Prozac for Plaintiff. (Tr. at 13).  The ALJ noted that Dr. Young assessed a GAF score of 40 to Plaintiff.  (Tr. at 13). Plaintiff reported to Dr. Young that her depression was lessening on September 21, 2012 and again on November 13, 2012, but she had difficulty with remembering.  (Tr. at 14).  The ALJ noted that Dr. Young found that Plaintiff was not likely to be able to resume employment in the next 12 months.  (Tr. at 14).

The ALJ afforded no weight to the opinion of Dr. Young that Plaintiff was unable to work on a sustained basis because that determination is reserved to the Commissioner.  (Tr. at 14).  Dr. Young checked the box indicating that Plaintiff had impaired short-term memory on September 21, 2012 and on October 15, 2012, but Dr. Young failed to include any explanation or

evaluation for this finding. (Tr. at 414, 418). Dr. Young found that Plaintiff's depression was improving with medication over time. Further, Dr. Young did not opine that Plaintiff had functional limitations due to her depression. The Court finds that the ALJ's consideration of Dr. Young's opinion is supported by substantial evidence.

The ALJ also summarized Dr. Kibria's consultative examination on November 20, 2012. (Tr. at 19). The ALJ noted that Dr. Kibria found Plaintiff's "work related mental activities, understanding, memory, concentration, social interaction and adaption were intact." (Tr. at 19). The ALJ accurately summarized the mental status examination conducted by Dr. Kibria. (Tr. at 473-74). Dr. Kibria did not indicate any functional limitations due to the finding of flattened affect and slow responses. The ALJ afforded some weight to Dr. Kibria's opinion, not adopting the portion that Plaintiff is able to perform a less restrictive level than sedentary work. (Tr. at 20). The Court finds that the ALJ's consideration of Dr. Kibria's opinion is supported by substantial evidence.

Likewise, the ALJ summarized consultative examiner Stanley Rabinowitz's consultative examination on November 22, 2008 and a second examination on April 9, 2011. (Tr. at 17-18, 373, 384). Dr. Rabinowitz found Plaintiff's memory intact. (Tr. at 17-18, 373, 384).

Plaintiff also argues that the Disability Determination Service interviewer noted that Plaintiff had difficulty concentrating and keeping on track. The ALJ did not consider this comment in his decision. There is no "rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, [], is not a broad rejection[,] which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561). In this case, the ALJ considered the record as a

whole and his failure to mention one piece of evidence from an interviewer is not reversible error.

Plaintiff also argues that Dr. Young assessed Plaintiff with a GAF score of 40, and Dr. Kasprzak assessed Plaintiff with a GAF score of 55.[5]  "Although GAF scores frequently have been cited in Social Security disability benefits determinations, the Commissioner has declined to endorse the GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings."  *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009) (internal quotation marks omitted) (citing *Wind v. Barnhart*, 133 F. App'x 684, 692 (11th Cir. 2005)). Courts in this district have also recognized that GAF scores are of "questionable value in determining an individual's mental functional capacity."  *Wilson*, 653 F. Supp. 2d at 1293 (quoting *Gasaway v. Astrue*, No. 8:06-CV-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008)).  Given their questionable value, courts have generally declined to find reversible error where an ALJ does not expressly discuss a claimant's GAF scores.  *See e.g.*, *Bailey v. Astrue*, No. 3:09-cv-383-JJRK, 2010 WL 3220302, at *8-9 (M.D. Fla. Aug. 13, 2010) (finding the ALJ's failure to mention Plaintiff's GAF scores did not require remand); *Smith v. Comm'r of Soc. Sec.*, No. 6:10-cv-1478-Orl-31 KRS, 2011 WL 6217110, at *6-7 (M.D. Fla. Nov. 1, 2011), *report and recommendation adopted*, 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), *aff'd*, 486 F. App'x 874 (11th Cir. 2012)).  Therefore, the Court finds that the ALJ did not err in failing to include a mental limitation based on Plaintiff's GAF scores.

---

[5]  The Court does not rely on the GAF score provided by Dr. Kasprzak due to the issue that Plaintiff was shown to be malingering during this examination.

The ALJ's determination is supported by substantial evidence that Plaintiff was able to perform sedentary work without additional mental limitations.  Dr. DuPont and Dr. Kasprzak could not determine if the results of Plaintiff's testing was reliable due to Plaintiff's malingering.  Thus, any of the results from the testing are not reliable.  While Dr. Young found Plaintiff to have short-term memory problems, Dr. Kibria and Dr. Rabinowitz found Plaintiff's memory intact.  The ALJ utilized the Grids to determine that Plaintiff was able to perform sedentary work.  All categories listed in the Grids are unskilled work and contained within the definition of unskilled work is the limitation to simple tasks.  The ALJ's decision finding Plaintiff able to perform sedentary work is supported by substantial evidence.  The Court finds that the ALJ did not err in failing to include any mental limitations in Plaintiff's RFC.  Accordingly, the Court finds the ALJ did not err in failing to include non-exertional limitations in Plaintiff's RFC and, thus, did not err in failing to retain a vocational expert.[6]

## C.  Vestibular Disorder

Plaintiff argues that the record contains a test establishing that Plaintiff has a vestibular disorder.  Plaintiff claims that the ALJ erred in failing to consider Plaintiff's difficulty with dizziness, headaches, and blurred vision.  The Commissioner responds that Plaintiff fails to cite to where in the record Plaintiff was diagnosed with a vestibular disorder.

On December 5, 2011, Mario Pierre, M.D. completed a Vestibular Autorotational Test/Electronystagmography Evaluation of Computerized Statistical Report concerning Plaintiff.

---

[6] "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform."  *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004).  An ALJ may not exclusively rely on the grids when the "'claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.'"  *Id.* (citations omitted).

(Tr. at 446-47).  Dr. Pierre found the results of the test to be abnormal.  (Tr. at 447).  Dr. Pierre recommended vestibular rehabilitation therapy, neurological examination, and an MRI.  (Tr. at 447).  Additionally, Plaintiff testified at the first hearing that she "get[s] dizzy and like I'm about to fall or pass out or something."  (Tr. at 38).  Plaintiff also testified that she has one headache a week that lasts for five to ten minutes, and her eyes bother her.  (Tr. at 38).

In her initial Memorandum (Doc. 15), Plaintiff failed to cite to any part of the record showing that she was diagnosed by a physician with a vestibular disorder.  Plaintiff complained of vertigo to Kenneth Berdick, M.D. on December 5, 2011, and he found that a "VNG with caloric irrigation and optokinetic nystagmus testing along with oscillating tracking and the use of vertical electrodes to evaluate vertigo" was warranted.  (Tr. at 437-38).  However, Plaintiff fails to cite to an evaluation after this test occurred.  Further, Plaintiff fails to cite to any case law that supports her position on this issue specifically that taking a test establishes Plaintiff is diagnosed with an impairment or that Plaintiff's subjective testimony establishes that Plaintiff has a diagnosis or limitations.  Further, the ALJ did not find Plaintiff to be entirely credible, finding that even though Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible.

Plaintiff testified that she had headaches once a week for five to ten minutes, bouts of dizziness, and trouble with her eyes.  The only instance the Court found where Plaintiff discussed any of these symptoms with her doctors, was in Dr. Berdick's records when she complained of vertigo, and Dr. Berdick sent her for testing.  (Tr. at 437-38).  Further, even if Plaintiff has a diagnosis, a diagnosis alone is insufficient to establish that a condition has functional limitations.  *Wood v. Astrue*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834137, at *5

(M.D. Fla. Feb. 14, 2012) *report and recommendation adopted*, No. 8:10-CV-2373-T-17AEP, 2012 WL 834132 (M.D. Fla. Mar. 13, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1207, 1213 n.6 (11th Cir. 2005)).

Although the Commissioner has the burden at step five to identify other work that is available in significant numbers in the national economy, once identified, the burden shifts back to the claimant who must prove that she is unable to perform those jobs in order to be found disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  Other than her subjective complaints, Plaintiff failed to indicate any functional limitations that would manifest as a result of the test for vestibular disorder that could cause her to be unable to perform work at a sedentary level.  The Court finds that the ALJ did not err in failing to mention Plaintiff's Vestibular Autorotational Test/Electronystagmography Evaluation of Computerized Statistical Report, and even if the ALJ erred, the error was harmless because Plaintiff was not diagnosed with a vestibular disorder and failed to establish any functional limitations.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 16, 2016.


MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties